14340

KING v. PILOT LIFE INS. CO.

(187 S. E., 369)

Before DENNIS, J., Anderson, December, 1935.

*Messrs. Watkins & Prince,* for appellant,

*Mr. C. B. Earle,* for respondent,

July 22, 1936.

*Per curiam.*

This action, one in which damages are sought for the claimed fraudulent breach of an insurance contract, was begun on May 10, 1935. It was alleged, among other things, that the defendant, Pilot Life Insurance Company, issued to the plaintiff, W. B. King, in February, 1926, its certain policy, whereby it agreed to pay him, according to the terms of the contract, monthly indemnity for disability caused by accident or disease; that in December, 1928, while the policy was in full force and effect, the insured became permanently and totally disabled, and has been so ever since; that the company paid him disability benefits for the months of January, February, and March, 1929, at the rate of $100.00 per month; that it then stopped such payments, and in August, 1929, through false and fraudulent representations of its agents, induced the insured, for the sum of $400.00, to surrender the policy and to execute a release of the company from any further liability under the contract.

The defendant denied by its answer the allegations of fraud or that the company had breached the contract of insurance in any way whatsoever, and pleaded the release as a full and complete discharge from all claims. About August 21, 1935, some months after the action was begun and before a trial was had, the plaintiff tendered the defendant the amount paid the insured by the company as consideration

for the release, but such tender was refused. The complaint was then amended by alleging these facts, which the defendant admitted to be true.

On the first trial of the case, in October, 1935, the jury failed to agree; on the second, in the following December, plaintiff was given a verdict for $3,000.00, and from judgment entered thereon the defendant appealed.

Several questions are raised by the exceptions, but under our view of the case it will be necessary to consider only the matter of the Court's refusal to direct a verdict for the defendant. The motion was made on two grounds, the first of which was as follows: "Because there was no tender of the amount paid for the release before the case was brought, although the plaintiff and his attorney knew of the release, and, therefore, that they are not in a position to recover in the face of the release."

The appellant contends that the general rule laid down in our cases, that it is necessary, before the commencement of an action, to pay back or to offer to pay back the consideration paid for the release, applies under the facts of this case, and that the trial Judge, therefore, should have directed a verdict on this ground.

In *Levister v. Railway Company*, 56 S. C., 508, 35 S. E., 207, 209, the Court had this to say: "To allow a person, after executing a release of all claims against another in consideration of a sum of money paid to him, to repudiate obligations which he assumed by executing the release, and at the same time reap the benefits which he received by executing the release, which would be a fraud, would be asking a court to release him from a fraud which he claims was practiced upon him by another, and at the same time committing a fraud upon such other person; for certainly it would be a fraud to obtain money paid to him in consideration that he would do something which he now claims he is not bound to do and will not do, for certainly, on the theory upon which he proceeds, the money which he retains is not his money, but belongs to the person against whom he is ask-

ing relief. Surely no court of justice should for a moment listen to any such demand. If, in such a case, the plaintiff conceives that the release, the execution of which he admits, was obtained by fraud, and for that reason seeks to avoid it, his first step is to return the money he received in consideration of executing the release; for he cannot be permitted to retain the benefits which he has received under a contract, and at the same time escape the obligations which such contract imposed upon him."

See, also, *Riggs v. Home Mut. Fire Protection Association,* 61 S. C., 448, 39 S. E., 614.

The question, of course, whether the rule applies in a given case depends upon the facts of such case. In *McKittrick v. Greenville Traction Company,* 84 S. C., 275, 66 S. E., 289, 290, it appeared that the person who executed the release was in such a mental condition as not to know or to remember its execution or the receipt of any consideration therefor. It was held that the release did not estop him from suing for damages for the injury. After referring to the general rule laid down in the *Levister case,* the Court said: "The rule then depends upon the principle of estoppel; for estoppel of this kind to be available to a party setting up a release it seems obvious that it must appear that the party who executed it either actually knew, or should have known, that the release had been executed, and a consideration had been paid or bestowed and had not been restored. It requires no authority to show that estoppel by conduct cannot arise when the person against whom it is alleged, by reason of mental deficiency, either temporary or permanent, could not be charged with notice, actual or constructive, of the doing of the act alleged to constitute estoppel. It is true that every one is presumed to know what papers he signs and what consideration he receives; but this presumption may be rebutted by evidence."

In *Harrison v. Southern Railway Company,* 131 S. C., 12, 127 S..E., 270, 271, it was held that: "If the attorneys

for the plaintiff had been in ignorance of the release, and had drafted their complaint without mention of it, then they would have had a perfect right to make tender of the consideration after the complaint was served. If the first knowledge they obtained of the release was by the answer of the defendant, they would still have had that right."

*Brown v. Walker Lumber Co.*, 128 S. C., 161, 122 S. E., 670, 672, was a case in which the plaintiff sued for damages for personal injury sustained by him while in the employ of the company. The defendant set up the defense of the execution of a written release in its favor, whereby, for the consideration of $750.00, the company was discharged from all claims growing out of the alleged injury. The Court required the plaintiff to reply to that part of the answer setting up the release and to state whether or not he had returned or offered to return to the company the consideration mentioned. The reply contained no allegation of repayment or tender, but it was alleged that the release was obtained through fraud and misrepresentation. At the conclusion of the testimony the trial Judge directed a verdict for the defendant. On appeal this Court said: "The underlying principle of the rule laid down in the *Levister case* is that the right of one to rescind a contract for fraud is subject to the condition that if, after discovery of the fraud, he still avails himself of the benefit of the contract, or permits the other party to proceed with the execution of it, he will be held to have waived the tort and affirmed the contract. The plaintiff here knew of the alleged fraud, certainly, before the trial; he set it up in his reply to the answer. But he did not return or offier to return the money paid him until all the evidence had been adduced at the trial and a motion made to direct a verdict. In that situation we think there was clearly a waiver of any right the plaintiff might have had to avoid the contract for fraud."

In the case at bar it is not contended that the plaintiff did not know, before the action was brought, of the alleged fraud of the defendant in procuring the release. The fraudu-

lent representations claimed to have been made by the company's agents in connection with the matter were set out in detail in the original complaint. The execution of the release, and the receipt by plaintiff of the consideration named, were also alleged. But counsel says he thought that the company had paid the benefits for only·three months, namely, January, February, and March, 1929, and that the amount of $400.00 paid on August 24, 1929, as consideration for the release, was justly due the insured at that time under the policy. This suggested reason for the failure to make tender at the proper time is unsatisfactory. We do not think it may soundly be held that the rule should not here be made to apply because the plaintiff claims to have forgotten a certain fact peculiarly within his knowledge, namely, the correct amount, $600.00, paid him by the company as monthly benefits under the insurance contract. If the insured, because of lapse of time, were uncertain about a matter regarded as so important, his counsel no doubt could have correctly informed himself thereabout through other sources. That he did so may be surmised as a reason for the tender that was made before the case was tried in October, 1935. In any event, we think, under the admitted facts, that the tender as made was not timely, and that there was a waiver by the plaintiff of any right he may have had to avoid the contract for fraud. *Brown v. Walker Lumber Co., supra.*

*Mitchell v. Mutual Benefit Health & Accident Association,* 178 S. C., 265, 182 S. E., 892, relied on by the respondent, is not at all controlling. The question, as there raised, was not even properly before the Court.

In view of the conclusion reached, consideration of the second ground of the motion for a directed verdict becomes unnecessary.

The judgment of the Circuit Court is reversed, and the case remanded, with instructions to enter judgment for the defendant under Rule 27 of this Court.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.